**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

RASHAD W. WALSTON, on behalf of himself and all others similarly situated,

Plaintiff,

v.

NATIONWIDE CREDIT, INC.,

Defendant.

Case No. 1:18-cv-07877

Assigned to the Hon. Gary Feinerman

**MEMORANDUM IN SUPPORT OF DEFENDANT NATIONWIDE CREDIT, INC.'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

Page

I. INTRODUCTION ....... 1

II. ALLEGATIONS OF THE COMPLAINT ....... 2

III. ARGUMENT ....... 2

A. Standard On A Motion To Dismiss ....... 2

B. Plaintiff Fails To State Any Claim Under The FDCPA In Count I ....... 3

1. Plaintiff's Section 1692d Claim Fails Because The Letter Benefitted Plaintiff And His Claim Is Otherwise Based On An Untenable Interpretation ....... 3

2. Plaintiff Fails To Plausibly Allege That A Consumer Would Be Misled By The Collection Letter ....... 5

3. Plaintiff Fails To Allege An Independent Basis For His Section 1692f Claim, Which Fails As A Matter Of Well-Settled Law ....... 7

C. Plaintiff Also Fails To State Any Plausible Claim Under The CROA In Count II ....... 8

1. Any CRO Claim Necessarily Fails Because NCI Is Not A Credit Repair Organization Subject To CROA ....... 8

2. Even If NCI Was A CRO (And It Is Not), Plaintiff Fails To State A CROA Claim ....... 9

IV. CONCLUSION ....... 10



MIA 31390917

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Ashcroft v. Iqbal,
556 U.S. 662 (2009)....................3

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007)....................3

Boucher v. Fin. Sys. of Green Bay, Inc.,
880 F.3d 362 (7th Cir. 2018)....................5, 6

Consumer Fin. Prot. Bureau v. Corinthian Colls., Inc.,
No. 1:14-CV-07194, 2015 WL 10854380 (N.D. Ill. Oct. 27, 2015)....................4

Dauval v. Preferred Collection & Mgmt. Servs., Inc.,
No. 11cv2269, 2012 WL 5928622 (M.D. Fla. Nov. 26, 2012)....................9

Ghulyani v. Stephens & Michaels Assocs., Inc.,
No. 15-CV-5191 SAS, 2015 WL 6503849 (S.D.N.Y. Oct. 26, 2015)....................4

Greene v. CCDN, LLC,
853 F. Supp. 2d 739 (N.D. Ill. 2011)....................8

Hayes v. Receivables Performance Mgmt., LLC,
No. 17-CV-1239, 2018 WL 4616309 (N.D. Ill. Sept. 26, 2018)....................7

Heffron v. Green Tree Servicing, LLC,
No. 15-cv-0996, 2016 WL 47915 (N.D. Ill. Jan. 5, 2016)....................7

Kielty v. Midland Credit Mgmt., Inc.,
No. 14-CV-0541-BAS BGS, 2015 WL 400584 (S.D. Cal. Jan. 28, 2015),
aff'd, 690 F. App'x 941 (9th Cir. 2017)....................9

Lox v. CDA, Ltd.,
689 F.3d 818 (7th Cir. 2012)....................6

McCready v. Jacobsen,
No. 06-2443, 2007 WL 1224616 (7th Cir. Apr. 25, 2007)....................4

O'Boyle v. Real Time Resolutions, Inc.,
910 F.3d 338 (7th Cir. 2018)....................5

Oslan v. Collection Bur. of Hudson Valley,
No. Civ. A. 01-2173, 2001 WL 34355648 (E.D. Penn. Dec. 13, 2001)....................9

Petrovic v. City of Chicago,
No. 06 C 6111, 2010 WL 1325709 (N.D. Ill. Mar. 30, 2010) ....................8

Plattner v. Edge Sols., Inc.,
422 F. Supp. 2d 969 (N.D. Ill. 2006) ....................8, 10

Rhone v. Med. Bus. Bureau, LLC,
No. 16 C 5215, 2017 WL 4875297 (N.D. Ill. Oct. 25, 2017) ....................7

Stewart v. Bierman,
859 F. Supp. 2d 754 (D. Md. 2012) ....................7

Wahl v. Midland Credit Mgmt.,
556 F.3d 643 (7th Cir. 2009) ....................6

White v. Fin. Credit Corp.,
No. 99 C 4023, 2001 WL 1665386 (N.D. Ill. Dec. 27, 2001) ....................9

Zurich Am. Ins. Co. v. Ocwen Fin. Corp.,
No. 17 C 2873, 2018 WL 4931720 (N.D. Ill. Oct. 11, 2018) ....................5

**Statutes**

15 U.S.C. § 1679 .................... *passim*

15 U.S.C. § 1692 .................... *passim*

**Rules**

Fed. R. Civ. P. 8 ....................3

Fed. R. Civ. P. 12 ....................2

## I. INTRODUCTION

In a January 22, 2018 letter (the "Letter") to plaintiff Rashad W. Walston ("Plaintiff") regarding his outstanding American Express credit card account balance, defendant Nationwide Credit, Inc. ("NCI") advised that American Express would consider an application from Plaintiff for a new American Express Optima card account if he paid his past-due account balance in full. Notwithstanding the Letter's clear and unequivocal language that Plaintiff would receive only the opportunity to apply for a new American Express card account if he paid his outstanding balance in full, Plaintiff contends that it somehow misled Plaintiff to believe that paying his delinquent account balance guaranteed him the ability to open a new American Express card account and "reestablish and improve [Plaintiff's] credit." (Compl. ¶¶ 39, 42.) This entirely unreasonable reading of the Letter, which is defeated by the plain language therein, cannot support any of Plaintiff's asserted claims under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. (the "FDCPA").

Additionally, Plaintiff's claims under the Credit Repair Organizations Act, 15 U.S.C. § 1679, et seq. ("CROA") fail as a matter of law because NCI obviously is not a credit repair organization ("CRO") governed by CROA. Notwithstanding Plaintiff's conclusory allegations, NCI is not an entity whose focus is the improvement or repair of a consumer's credit record. Indeed, nowhere does the Letter mention Plaintiff's credit record, much less any offer from NCI or American Express to help improve his credit record. Accordingly, Plaintiff's CROA claims fail as well.

For these reasons, as further detailed below, the Court should grant this Motion in its entirety without leave to amend and dismiss this action with prejudice.

## II. ALLEGATIONS OF THE COMPLAINT

In his Complaint, Plaintiff does not dispute that he incurred a "debt [that] arose out of past due payments on Plaintiff's American Express Blue Cash Everyday personal credit card . . . ." (Compl. ¶ 14.) Plaintiff alleges that, after defaulting on the debt, he received the Letter from NCI on or about January 22, 2018, "in an attempt to collect the [] debt from Plaintiff." (Id. ¶ 16.) As pertinent here, the Letter provides:

> American Express would like to offer you the opportunity to regain Card Membership. You have been selected to receive an Optima Card application if you pay your balance in full on the American Express® account referenced above.
>
> After you pay your balance in full, American Express will send you an application for the new Optima Card. Your application will be approved by American Express unless:
>
> - You have an active bankruptcy at the time of your application.
> - You have accepted another offer for an Optima Card account from a different agency or from American Express.
> - You have an active American Express account.
> - American Express determines that you do not have the financial capacity to make the minimum payment on this new Optima Card account.

(Compl., Ex. A at 1.) Based upon the above-quoted content of the Letter, Plaintiff asserts in Count I of the Complaint that NCI violated Sections 1692d, 1692e and 1692f of the FDCPA. (Id. ¶¶ 38-44.) Plaintiff asserts that NCI violated Sections 1679b and 1679c of CROA in Count II of the Complaint. (Id. ¶¶ 46-52.)

## III. ARGUMENT

### A. Standard On A Motion To Dismiss

A court may dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) "for failure to state a claim upon which relief can be granted." To survive a motion to dismiss for failure to state a claim, the complaint "must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

As explained below, Plaintiff's claims do not meet these standards.

## B. Plaintiff Fails To State Any Claim Under The FDCPA In Count I.

### 1. Plaintiff's Section 1692d Claim Fails Because The Letter Benefitted Plaintiff And His Claim Is Otherwise Based On An Untenable Interpretation.

Section 1692d of the FDCPA prohibits debt collectors from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." The statute provides a non-exhaustive list of examples illustrating the egregious nature of the contemplated conduct, including "[t]he use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person," "[t]he use of obscene or profane language," and "causing a telephone to ring . . . repeatedly or continuously with the intent to annoy, abuse, or harass [a] person . . . ." 15 U.S.C. § 1692d(1), (2), (5). The Letter at issue here is quite the opposite: it offered to send Plaintiff "an Optima Card application if [he] pay[s] [his] balance in full . . . ." In doing so, the Letter offered Plaintiff a benefit by providing him with added incentive to pay off his debt (something he already agreed, and failed, to do when he opened his account). Accordingly, Plaintiff's contention that the Letter was somehow harassing, oppressive, or abusive is nonsensical.

Furthermore, Plaintiff otherwise proffers an entirely unreasonable reading of the Letter that cannot support an FDCPA claim. As an initial matter, Plaintiff alleges that the Letter violated Section 1692d by abusively "provid[ing] Plaintiff . . . the opportunity to reestablish and improve credit" (Compl. ¶ 39) but the Letter makes no mention of any opportunity to "reestablish and improve credit" whatsoever. Any reference to Plaintiff's credit is entirely fabricated out of nothing and should not be countenanced by this Court. Likewise, Plaintiff's contention that an unsophisticated consumer could misunderstand that "they may ultimately not have the opportunity to regain card membership" is grossly unreasonable. (Id.) Again, the Letter contains zero language, or even the suggestion, that card membership is guaranteed. To the contrary, it repeatedly and unequivocally advises that payment of the debt will provide Plaintiff with the opportunity to apply for an American Express card and that approval is subject to multiple conditions. (See id., Ex. A at 1.) As such, Plaintiff's construction of the Letter is untenable and his Section 1692d claim must be dismissed. See McCready v. Jacobsen, No. 06-2443, 2007 WL 1224616, at *2 (7th Cir. Apr. 25, 2007) (holding courts "will not entertain a bizarre, peculiar, or idiosyncratic interpretation of a collection letter[]"); see also Ghulyani v. Stephens & Michaels Assocs., Inc., No. 15-CV-5191 SAS, 2015 WL 6503849, at *3 (S.D.N.Y. Oct. 26, 2015) (denying FDCPA claim and "declin[ing] to reconstruct the Letter to support [plaintiff's] farfetched and implausible interpretation").

Finally, even if Plaintiff's interpretation of the Letter was appropriate (and it absolutely is not), he still fails to adequately allege a claim under Section 1692d. Even if a debtor may not understand that "they may ultimately not have the opportunity to regain card membership," such confusion plainly does not rise to the level of harassing, oppressive, or abusive conduct within the ambit of Section 1692d. See, e.g., Consumer Fin. Prot. Bureau v. Corinthian Colls., Inc., No.

1:14-CV-07194, 2015 WL 10854380, at *5 (N.D. Ill. Oct. 27, 2015) (declining to dismiss claim where debt collector university pulled debtor students out of their classes in front of classmates); Zurich Am. Ins. Co. v. Ocwen Fin. Corp., No. 17 C 2873, 2018 WL 4931720, at *9 (N.D. Ill. Oct. 11, 2018) (declining to dismiss claim where debt collector called debtor almost 60 times after debtor pleaded with them to stop).

In light of the foregoing, the first sub-part of Count I for violation of Section 1692d of the FDCPA fails.

**2. Plaintiff Fails To Plausibly Allege That A Consumer Would Be Misled By The Collection Letter.**

In analyzing claims under Section 1692e, the second sub-part of Count I, which prohibits using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," courts assess whether a collection letter could confuse or mislead an unsophisticated consumer. Boucher v. Fin. Sys. of Green Bay, Inc., 880 F.3d 362, 366 (7th Cir. 2018). The pertinent inquiry is "whether someone of modest education and limited commercial savvy would likely be deceived by the letter." O'Boyle v. Real Time Resolutions, Inc., 910 F.3d 338, 344 (7th Cir. 2018). Notably, however, the unsophisticated consumer "is wise enough to read collection notices with added care . . . ." Boucher, 880 F.3d at 366 (internal quotation omitted).

Despite the foregoing standard, Plaintiff nonsensically asserts that the Letter could mislead a consumer into believing that paying their debt in full would result in "the opportunity to reestablish card membership . . . [but] whether a consumer ultimately receives the benefit of the offer is entirely within the discretion of American Express." (Compl. ¶ 42.) This strained assertion is based on an erroneous description of the unsophisticated consumer standard and, moreover, defeated by the plain language of the Letter.

The unsophisticated consumer is "not a dimwit, 'has rudimentary knowledge about the financial world' and is 'capable of making basic logical deductions and inferences'." Lox v. CDA, Ltd., 689 F.3d 818, 822 (7th Cir. 2012) (citing Wahl v. Midland Credit Mgmt., 556 F.3d 643, 645 (7th Cir. 2009)). Even someone with "rudimentary knowledge . . . about the financial world" understands that the opportunity to submit an application for a new account is, just like any other application for credit, not a guarantee that the application will be approved. Indeed, Plaintiff's allegations concede that "[a]n unsophisticated consumer reading [the Letter] would be left with the impression that payment in full . . . would result in the opportunity to reestablish card membership" and not the impression that membership was guaranteed. (Compl. ¶ 42.) Accordingly, even an unsophisticated consumer would not be confused or misled by the Letter.

Additionally, any claim of deception is defeated by the plain language of the Letter. The Letter makes unequivocally clear that American Express's approval of any application for an Optima Card is conditioned on the several factors bulleted in the Letter for ease of review. Critically, it provides that an "application will be approved by American Express unless . . ." among other things, "American Express determines that you do not have the financial capacity to make the minimum payment on this new Optima Card account." (Compl., Ex. A at p. 1.) Accordingly, there is no basis for Plaintiff to plausibly allege that even an unsophisticated consumer, who "is wise enough to read collection notices with added care" (Boucher, 880 F.3d at 366) would believe that the opportunity to apply for a new account guarantees that the application will be approved.

For these reasons, the second sub-part of Count I for violation of Section 1692e of the FDCPA also fails.

### 3. Plaintiff Fails To Allege An Independent Basis For His Section 1692f Claim, Which Fails As A Matter Of Well-Settled Law.

Section 1692f is a catchall provision of the FDCPA. It prohibits debt collectors from engaging in "unfair and unconscionable conduct, where the conduct is similar to that prohibited by the FDCPA but not covered by any other section therein." Rhone v. Med. Bus. Bureau, LLC, No. 16 C 5215, 2017 WL 4875297, at *3 (N.D. Ill. Oct. 25, 2017) (quotation omitted) (emphasis added). Accordingly, "[a] Plaintiff who uses the same factual allegations underlying another [Section] 1692 claim for his [Section] 1692f claim . . . fails to state an independent basis on which relief can be granted." Hayes v. Receivables Performance Mgmt., LLC, No. 17-CV-1239, 2018 WL 4616309, at *6 (N.D. Ill. Sept. 26, 2018). Here, Plaintiff's Section 1692f claim is based on the same allegations underlying his Section 1692e claim. (Compare Compl. ¶ 42 ("Defendant . . . misleadingly provided an illusory offer of regaining card membership to Plaintiff in exchange for Plaintiff's full payment of the subject debt.") with id. ¶ 44 ("Plaintiff could go about paying the subject debt yet ultimately not receive the promised opportunity").) Because these claims are based on the same alleged misconduct, Plaintiff's Section 1692f claim fails as a matter of law. See Heffron v. Green Tree Servicing, LLC, No. 15-cv-0996, 2016 WL 47915, at *5 (N.D. Ill. Jan. 5, 2016) (dismissing Section 1692f claim because it was "predicated on the same factual allegations as [plaintiff's] section 1692e claim" and therefore "fail[ed] to state an independent basis on which relief can be granted"); Stewart v. Bierman, 859 F. Supp. 2d 754, 765 (D. Md. 2012) (dismissing a section 1692f claim where plaintiff failed to allege any conduct separate and distinct from the alleged 1692e violations).[1]

[1] Even if Plaintiff's Section 1692f claim did not fail as a matter of law, it must be dismissed for the same reasons as Plaintiff's Section 1692e claim since it is based on the same unreasonable interpretation of the Letter and insufficient allegations.

As a result of this well-settled standard under Section 1692f of the FDCPA, the third and final sub-part of Count I fails, requiring dismissal of Count I in its entirety with prejudice.

**C. Plaintiff Also Fails To State Any Plausible Claim Under The CROA In Count II.**

**1. Any CRO Claim Necessarily Fails Because NCI Is Not A Credit Repair Organization Subject To CROA.**

CROA governs the conduct of CROs, which are defined as any:

> [P]erson who uses any instrumentality of interstate commerce or the mails to sell, provide or perform . . . any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of—
>
> (i) improving any consumer's credit record, credit history, or credit rating; or
>
> (ii) providing advice or assistance to any consumer with regard to any activity or service in clause . . . .

15 U.S.C. § 1679a(3). Based on this definition, courts within this District have emphasized that CROs are "entities whose focus is the improvement or repair of a consumer's credit record . . . [and] not entities whose activities are aimed at assisting consumers in developing 'credit worthy behavior'; and paying their debts which may result in improved actual credit as a collateral consequence, rather than as a program objective." Plattner v. Edge Sols., Inc., 422 F. Supp. 2d 969, 975 (N.D. Ill. 2006) (emphasis added). For example, in Greene v. CCDN, LLC, 853 F. Supp. 2d 739, 751-52 (N.D. Ill. 2011), the court concluded that the defendant was a CRO where the defendant "confirmed . . . [it] would help to repair and restore [plaintiffs'] credit" and made express and detailed credit-related assurances, such as representing that "the majority of negative[] [reporting] will be removed from a typical customers credit reports within the first 4 to 6 months of this process."

Here, Plaintiff fails to allege any basis to conclude that NCI is a CRO covered by CROA. Instead, Plaintiff merely parrots the statutory definition of a CRO (Compl. ¶ 45), which is insufficient to state a claim. See Petrovic v. City of Chicago, No. 06 C 6111, 2010 WL 1325709,

at *4 (N.D. Ill. Mar. 30, 2010) (dismissing claim where plaintiff's "conclusory allegations merely parrot the elements of a . . . claim"). And critically, courts have generally held that a debt collector seeking to collect a debt is not a CRO within the purview of CROA. See White v. Fin. Credit Corp., No. 99 C 4023, 2001 WL 1665386, *6 (N.D. Ill. Dec. 27, 2001) (holding a debt collector was not a CRO because it was "not offering to perform . . . a service for the purpose of improving [plaintiff's] credit history . . . . It [was] merely asking [plaintiff], quite reasonably, to fulfill his obligation"); Oslan v. Collection Bur. of Hudson Valley, No. Civ. A. 01-2173, 2001 WL 34355648, at *1 (E.D. Penn. Dec. 13, 2001) ("Collection agencies, insofar as they do not seek compensation for credit repair services, do not engage in the type of conduct which Congress sought to regulate in enacting the CROA."); Dauval v. Preferred Collection & Mgmt. Servs., Inc., No. 11cv2269, 2012 WL 5928622, at *4-5 (M.D. Fla. Nov. 26, 2012) (holding that a debt collector seeking to collect a debt and offering to restore the debtor's credit in exchange for payment on the debt was not a credit repair organization); see also Kielty v. Midland Credit Mgmt., Inc., No. 14-CV-0541-BAS BGS, 2015 WL 400584, at *4 (S.D. Cal. Jan. 28, 2015), aff'd, 690 F. App'x 941 (9th Cir. 2017) ("Seeking the repayment of a debt and utilizing the 'potential of a lower credit score as motivation to encourage [a person] to pay the debt' does not make a person a credit repair organization.")

Given that NCI is not a CRO, no claim for violation of CROA may be stated against it.

**2. Even If NCI Was A CRO (And It Is Not), Plaintiff Fails To State A CROA Claim.**

Plaintiff's claims under CROA are based on the same allegations as his claims under the FDCPA and fail on those same bases. For example, Plaintiff contends that NCI violated Section 1679b(a)(4), which prohibits any "deception . . . in connection with the offer or sale of the services of the credit repair organization." This claim, like Plaintiffs' claim under Section

1692e, is based on the allegation that the Letter deceptively included illusory offers for an Optima Card and to improve Plaintiff's credit. (Compl. ¶ 49.) As already discussed at length above, any alleged "deception" is based on an intentional misreading of the Letter that is inconsistent with the plain language therein – i.e., offering the opportunity to apply for an Optima Card account and enumerating the conditions placed upon such application. Further, any reference to an "opportunity" to improve Plaintiff's credit record is entirely fabricated by Plaintiff and in no way is addressed, expressly or implicitly, in the Letter.

Plaintiff's Section 1679b(b) similarly fails for lack of any plausible basis. Section 1679b(b) prohibits CROs from charging for credit repair services before they are fully performed. Plaintiff alleges that he was required to pay his debt in full before NCI allegedly connected him with American Express to "go about improving his credit" (Compl. ¶ 50), but at no point in the Letter did NCI or American Express address Plaintiff's credit record or make any offer to improve it.[2]

Thus, even if NCI was a CRO, which it plainly is not, Plaintiff fails to sufficiently allege any basis for violation of CROA. Accordingly, Count II should be dismissed in its entirety with prejudice.

## IV. CONCLUSION

For the foregoing reasons, NCI respectfully requests that the Court grant this Motion in its entirety without leave to amend and dismiss this action with prejudice.

---

[2] Plaintiff's Complaint also includes a two-sentence claim for violation of 15 U.S.C. §1679c(a) ("Section 1679c(a)"), which requires CROs to provide a written statement "before any contract or agreement between the customer and the credit report organization is executed . . . ." As already discussed, Plaintiff's claim fails because NCI is not a CRO. See Plattner, 422 F. Supp. 2d at 976-77 (dismissing Section 1679c claim where defendant was not a CRO). Further, even if it was, Section 1679c(a) does not require CROs to provide consumers with a written statement at the time any alleged offer is made. It merely requires the written statement to be provided "before any contract or agreement . . . is executed . . . ." Accordingly, even if the requisite written statement was not provided in the Letter, it could have been provided at any time prior to the execution of an agreement.

Dated: February 4, 2019

Respectfully submitted,

NATIONWIDE CREDIT, INC.

By: */s/ Jennifer L. Majewski*
Jennifer L. Majewski

Brian C. Frontino
STROOCK & STROOCK & LAVAN LLP
200 South Biscayne Boulevard, Suite 3100
Miami , FL 33131-5323
Telephone: 305-789-9300
Fax: 305-789-9302
Email: bfrontino@stroock.com

Raymond A. Garcia (*pro hac vice*)
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038
Telephone: 212-806-5400
Fax: 212-806-6006
Email: rgarcia@stroock.com

Jeffrey D. Pilgrim
Jennifer L. Majewski
Pilgrim Christakis LLP
321 N. Clark St., 26th Floor
Chicago, Illinois 60654
Telephone: 312-939-0953
Fax: 312-939-0983
Email: jmajewski@pilgrimchristakis.com

Attorneys for Defendant
NATIONWIDE CREDIT, INC.