UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RASHAD W. WALSTON, on behalf of himself and all others similarly situated, ) | |
| ) | 18 C 7877 |
| Plaintiff, ) | |
| ) | Judge Gary Feinerman |
| vs. ) | |
| ) | |
| NATIONWIDE CREDIT, INC., ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER

Rashad Walston brought this suit against Nationwide Credit, Inc., alleging that a collection letter it sent him violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Credit Repair Organizations Act ("CROA"), 15 U.S.C. § 1679 *et seq.* Doc. 1. After Nationwide moved to dismiss under Civil Rule 12(b)(6), Doc. 16, Walston obtained leave to amend and filed an amended complaint, Docs. 18, 21-22. Nationwide again moves to dismiss. Doc. 27. The motion is granted, and the suit is dismissed with prejudice.

### Background

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, but not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Walston's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019-20 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Walston as those

1

materials permit. *See Domanus v. Locke Lord, LLP*, 847 F.3d 469, 478-79 (7th Cir. 2017). In setting forth the facts at this stage, the court does not vouch for their accuracy. *See Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018).

Walston incurred a debt with American Express for "past due payments on [his] American Express Blue Cash Everyday personal credit card." Doc. 22 at ¶ 14. Nationwide, a debt collection agency, sent Walston a letter attempting to collect the debt and stating that American Express had authorized it to offer him the "opportunity to regain Card Membership." *Id*. at ¶¶ 8, 16-17; Doc. 22-1 at 2. Specifically, the letter said that if Walston paid his balance, he would be sent an application for an American Express Optima Card, Doc. 22 at ¶ 18; Doc 22-1 at 2, which is a card issued to "subprime borrowers" and "designed to provide those with negative credit history the opportunity to reestablish creditworthiness," Doc. 22 at ¶ 20.

The letter added:

> Your application [for an American Express Optima Card] *will be approved* by American Express *unless*:
>
> • You have an active bankruptcy at the time of your application.
>
> • You have accepted another offer for an Optima Card account from a different agency or from American Express.
>
> • You have an active American Express account.
>
> • *American Express determines that you do not have the financial capacity to make the minimum payment on this new Optima Card account*.

Doc. 22-1 at 2 (emphasis added). Given the final proviso, Walston "could pay the subject debt in full, submit his application for the Optima Card, only to ultimately not receive the promised benefits that induced [him] to pay the subject debt based on a determination solely within the discretion of American Express" that he did not have the financial ability to make the minimum payment on the Optima Card. Doc. 22 at ¶ 24.

## Discussion

### I.     FDCPA Claims

For his FDCPA claims, Walston alleges that Nationwide's letter violated 15 U.S.C.
§§ 1692d, 1692e, and 1692f.  Doc. 22 at ¶¶ 38-46.  An essential premise underlying Walston's
FDCPA claims is that Nationwide's offer of the opportunity to apply for an American Express
Optima Card was "illusory."  Doc. 22 at ¶¶ 25, 40, 43; Doc. 32 at 5-8, 10, 14.  As his opposition
brief makes clear, Doc. 32, and as he confirmed at argument on the motion, Doc. 34, Walston
does *not* maintain that Nationwide's offer was "illusory" in the sense that it was insincere or a
sham—that is, in the sense that American Express had no intention of granting applications for
an Optima Card and made the offers simply as a ruse to get Walston and other American Express
debtors to pay their debts.  Rather, Walston maintains that the offer was "illusory" because
American Express retained the discretion to decide whether any particular debtor had the
financial capacity to make minimum payments on the Optima Card and thus whether to grant the
debtor's application.  Doc. 32 at 2, 5-6, 11; Doc. 34.

Walston's submission rests on the incorrect premise that a decisionmaker's discretion in
evaluating applications, standing alone, renders illusory an offer to apply.  *See United States v.
De Horta Garcia*, 519 F.3d 658, 663 (7th Cir. 2008) (Rovner, J., concurring) (noting that "the
prospect of relief" under an immigration statute allowing for the discretionary waivers of
deportation "by no means was illusory" simply because the immigration authorities had the
discretion to decide which applications to grant).  Williston teaches that "a promise that the
promisor would favorably consider an application" is not illusory where the promise "might be
read to impose at least an obligation to consider the application in good faith or in accordance
with criteria specified elsewhere."  1 Williston on Contracts § 4:27 (2019).  Here, in declining to
argue that the offer to apply for an Optima Card was insincere or a sham, Walston necessarily

3

concedes that his application would be considered in good faith. And the offer itself specifies the criterion—whether the applicant had the financial capability to make the minimum payment on the card—with which American Express would evaluate it. Accordingly, the fact that American Express retained the discretion to determine whether to grant Walston's application did not render illusory the offer to apply for an Optima Card, and that conclusion defeats the premise underlying his FDCPA claims and thus the claims themselves.

The analysis could end there, but the court will proceed to address the three FDCPA claims individually. Section 1692d prohibits a debt collector "from engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Walston alleges that Nationwide engaged in abusive behavior by offering him an illusory "carrot"—the opportunity to apply for an Optima Card—to incentivize him to repay his debt. Doc. 22 at ¶ 40; Doc. 32 at 7-8. As shown above, the offer was not illusory. Making that offer to Walston cannot, in any sense of the terms, be considered to have had "the natural consequence of … harass[ing], oppress[ing], or abus[ing]" him.

Section 1692e prohibits a debt collector from "us[ing] any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e; *see Ruth v. Triumph P'ships*, 577 F.3d 790, 799-800 (7th Cir. 2009). The provision, essentially a "rule against trickery," *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473 (7th Cir. 2007), sets forth "a nonexclusive list of prohibited practices" in sixteen subsections, *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010, 1019 (7th Cir. 2014). Section 1692f, meanwhile, proscribes the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Because part of Walston's § 1692f claim rests on the same

conduct as his § 1692e claim, Doc. 22 at ¶¶ 43, 45; Doc. 32 at 10-14, that part of the § 1692f claim rises or falls with the § 1692e claim.

The Seventh Circuit "has consistently held that with regard to 'false, deceptive, or misleading representations' in violation of § 1692e of the FDCPA, the standard is … whether the debt collector's communication would deceive or mislead an unsophisticated, but reasonable, consumer if the consumer is not represented by counsel." *Bravo v. Midland Credit Mgmt., Inc.*, 812 F.3d 599, 603 (7th Cir. 2016); *see also Gruber v. Creditors' Prot. Serv., Inc.*, 742 F.3d 271, 273 (7th Cir. 2014) (noting that FDCPA claims "are evaluated under the objective 'unsophisticated consumer' standard"). The reasonable consumer standard protects a consumer who "may be uninformed, naive, or trusting," but who nonetheless "possess[es] rudimentary knowledge about the financial world." *Gruber*, 742 F.3d at 273 (internal quotation marks omitted). The reasonable consumer, although unsophisticated, "is not a dimwit" and "is capable of making basic logical deductions and inferences." *Lox v. CDA, Ltd.*, 689 F.3d 818, 822 (7th Cir. 2012) (internal quotation marks omitted).

Statements alleged to be false or misleading under the FDCPA fall into three categories. *See Ruth*, 577 F.3d at 800. The first consists of statements that are "plainly, on their face, … not misleading or deceptive. In these cases, [the court] do[es] not look to extrinsic evidence to determine whether consumers were confused. Instead, [the court] grant[s] dismissal or summary judgment in favor of the defendant based on [its] own determination that the statement complied with the law." *Ibid*. The second category consists of "statements that are not plainly misleading or deceptive but might possibly mislead or deceive the unsophisticated consumer. In these cases, … plaintiffs may prevail only by producing extrinsic evidence, such as consumer surveys, to prove that unsophisticated consumers do in fact find the challenged statements misleading or

deceptive." *Ibid.* The third category consists of statements that are "so clearly confusing on [their] face[s] that a court may award summary judgment to the plaintiff on that basis." *Id*. at 801 (internal quotation marks omitted).

To prevail on its motion to dismiss the §§ 1692e and 1692f claims, Nationwide must show that its letter to Walston falls in the first *Ruth* category. *See Zemeckis v. Glob. Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012) ("[A] plaintiff fails to state a claim and dismissal is appropriate as a matter of law when it is apparent from a reading of the letter that not even a significant fraction of the population would be misled by it.") (internal quotation marks omitted). It does. The letter states that if Walston pays his debt and applies for an Optima Card, his "application will be approved by American Express unless … American Express determines that [he does] not have the financial capacity to make the minimum payment on this new Optima Card account." Doc. 22-1 at 2. A reasonable consumer would not be misled by this clear and comprehensible statement, which conveys in plain English that his application would be granted "unless" American Express determined that he could not afford the minimum payment. The letter plainly is not misleading or deceptive, so Walston's §§ 1692e and 1692f claims fail as a matter of law. *See Dunbar v. Kohn Law Firm, S.C.*, 896 F.3d 762, 764 (7th Cir. 2018) (affirming dismissal of an FDCPA claim, reasoning that the letter was not false or misleading in stating that something "may" happen when, in fact, that something could have happened).

Walston's § 1692f claim also alleges that it was unfair for Nationwide to act as a credit repair organization. Doc 22 at ¶ 46. That part of the § 1692f claim fails because, as shown below, Nationwide did not act as a credit repair organization.

## II. CROA Claims

For his CROA claims, Walston alleges that Nationwide violated 15 U.S.C. §§ 1679b(a)(3), 1679b(a)(4), 1679b(b), and 1679c(a). Doc. 22 at ¶¶ 47-54. The CROA's

purposes are: "(1) to ensure that prospective buyers of the services of credit repair organizations are provided with the information necessary to make an informed decision regarding the purpose of such services; and (2) to protect the public from unfair or deceptive advertising and business practices by credit repair organizations." 15 U.S.C. § 1679(b). The CROA defines "credit repair organization" as:

> any person who uses any instrumentality of interstate commerce or the mails to sell, provide, or perform (or represent that such person can or will sell, provide, or perform) any service, in return for the payment of money or other valuable consideration, for the express or implied purpose of—
>
> > (i) improving any consumer's credit record, credit history, or credit rating; or
> >
> > (ii) providing advice or assistance to any consumer with regard to any activity or service described in clause (i).

15 U.S.C. § 1679a(3)(A). Nationwide seeks dismissal of the CROA claims on the ground that it is not a credit repair organization and thus not subject to the CROA. Doc. 28 at 13-14.

Walston asserts that Nationwide is a "credit repair organization" because it offered him the opportunity to pay his debt and to regain his American Express card membership and because doing those things could "improve [his] credit record/history/rating." Doc. 22 at ¶¶ 48-49; *see* Doc. 32 at 14-15 (relying on ¶¶ 48-49 of the complaint). That misunderstands what it means to be a credit repair organization. As just noted, a credit repair organization is a business that "sell[s], provide[s], or perform[s] … any service … *for the express or implied purpose of …* improving any consumer's credit record, credit history, or credit rating." 15 U.S.C. § 1679a(3)(A). Particularly given the emphasized text, the definition of credit repair organization encompasses "entities whose *focus* is on the improvement or repair of a consumer's credit record, credit history or credit rating, explicitly or implicitly, *not* entities whose activities are aimed at assisting consumers in developing 'creditworthy behavior' and paying their debts,

which may result in improved actual credit as a *collateral consequence*, rather than as a program

objective." *Plattner v. Edge Sols., Inc.*, 422 F. Supp. 2d 969, 975 (N.D. Ill. 2006) (emphasis

added). Put another way, for an entity to be a credit repair organization, the purpose of the

service provided by the entity, and not just the service's incidental effect, must be the

improvement or repair of the consumer's credit record. *See Greene v. CCDN, LLC*, 853

F. Supp. 2d 739, 752 (N.D. Ill. 2011) (citing *Plattner* with approval); *White v. Fin. Credit Corp.*,

2001 WL 1665386, at *6 (N.D. Ill. Dec. 27, 2001) ("[T]he CROA is aimed at companies that are

in the business of performing 'any service … in return for' money for the purpose of improving a

party's credit history.") (omission in original).

On this understanding of the statute, Nationwide was not acting as a credit repair

organization. Nationwide was providing a service to American Express, not to Walston; that

service, and Nationwide's focus, was debt collection for American Express as a creditor, not

credit repair for Walston as a debtor. Although Walston's paying his debt and obtaining an

Optima Card might have had the incidental effect of improving his credit, that was not the

purpose or focus of Nationwide's efforts; for better or worse, Nationwide's purpose and focus

was to collect money for its client, American Express, and also to solicit potential new business

for American Express in the form a new credit application from Walston. Those efforts did not

make Nationwide a credit repair organization, and the CROA claims against it accordingly are

dismissed. *See White*, 2001 WL 1665386, at *6 (holding that "a debt collector providing a

service for creditors" was not a credit repair organization).

### Conclusion

Nationwide's motion to dismiss is granted. The dismissal is with prejudice, as Walston

already amended his complaint, Docs. 18, 21-22, and he does not request leave to amend or

suggest how another amendment might cure the defects identified by the present motion to dismiss. *See Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("Nothing in Rule 15, nor in any of our cases, suggests that a district court must give leave to amend a complaint where a party does not request it or suggest to the court the ways in which it might cure the defects. To the contrary, we have held that courts are within their discretion to dismiss with prejudice where a party does not make such a request or showing."); *Gonzalez-Koeneke v. West*, 791 F.3d 801, 808 (7th Cir. 2015) ("A district court acts within its discretion in … dismissing a complaint with prejudice … when the plaintiff fails to demonstrate how [an] amendment would cure the deficiencies in the prior complaint."). Judgment will be entered in favor of Nationwide and against Walston.

August 30, 2019

_____

United States District Judge